UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | |
|---|---|
| Michelle Gallagher, individually and on behalf of all others similarly situated, | 1:22-cv-00614 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Lactalis American Group, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Lactalis American Group, Inc. ("Defendant") manufactures, labels, markets, and sells feta cheese labeled as made in Europe under the Président brand ("Product").



1

2. Relevant front label representations include "Europe's Leading Cheese Expert," a gold olive branch wreath, and "feta" in stylized in ancient-Greek font.

3. The labeling gives consumers the impression the Product was made in Greece, or at the very least in another European country.

I. **FETA CHEESE AND GREECE**

4. Feta is a cheese that most or all consumers associate with Greece.

5. The Oxford English Dictionary defines "feta" as a "white, salty, ewe's-milk cheese made in Greece."

6. Merriam-Webster defines it as "a white moderately hard and crumbly Greek cheese made from sheep's or goat's milk and cured in brine."

7. The Cambridge Dictionary defines "feta" as "a white Greek cheese, usually made from sheep's or goat's milk."

8. Because of the cheese's definitional connection to Greece, consumers expect that feta, labeled with representations referring to Europe and Greece, has been made in Greece.

II. **DEMAND FOR AUTHNTICITY**

9. Consumers are faced with increasing commercialization of products and seek brands that are genuine – feta cheese from Greece, sake from Japan, and tomatoes from Italy.

10. For many consumers, "authenticity has overtaken quality as the prevailing purchasing criterion."

11. Consumers pay a price premium "for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place," such as Greece for feta cheese.

## III.   REPRESENTATION PRODUCT IS MADE IN GREECE

12. The front label representations include a gold olive branch wreath, "feta" in ancient-Greek font with a pronounced "e," and "Europe's Leading Cheese Expert."



13. The olive branch around the brand name causes consumers to expect a feta cheese made in Greece.

14. For centuries, olive branch wreaths or "kotinos" were awarded to winners of the ancient Olympic Games.

15. As part of the 2004 Summer Olympics in Athens, kotinos were bestowed upon victorious athletes and were part of the official logo for the Athens games.

 

3

16. Consumers who see text stylized in ancient-Greek font will associate it with Greece.

 

17. When the kotinos and stylized ancient Greek font are coupled with the statement, "Europe's Leading Cheese Experts," reasonable consumers will expect the Product was made in Greece by a European, and specifically, a Greek company.

18. However, the representations are misleading because the Product was not made in Greece or Europe but in the United States.

19. The small print on the bottom of the container discloses that President has "over 80 years of French heritage," and no connection to Greece.



20. The bottom panel further states the Product is "Dist.[ributed] By "Lactalis American Group, Inc., Buffalo NY 14220."

21.    Should consumers view any product information on third-party websites, they will learn the Product was not made in Greece but rather "Freshly Crafted in the USA" and "Made in the European Tradition."

**President Crumbled Feta Cheese, 12 oz:**

- Made in the European tradition
- Great Texture and Taste
- rBST Free
- Easy Shaker Lid
- Freshly Crafted in the USA

22.    Consumers expect feta cheese represented as made in Europe with label elements evocative of Greece to be made in Greece.

## IV.    CONCLUSION

23.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

24.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

25.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

26.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

27.    The Product is sold for a price premium compared to other similar products, no less than $6.77 for 12 oz (340g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

28. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

30. Plaintiff Michelle Gallagher is a citizen of Florida.

31. Defendant Lactalis American Group, Inc. is a Delaware corporation with a principal place of business in Buffalo, Erie County, New York.

32. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

33. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

34. The Product is available to consumers from grocery stores, warehouse club stores, convenience stores, big box stores, and online.

35. Venue is in this District because a substantial part of the events or omissions giving rise to the claims occurred here, including Defendant's decisions with respect to the labeling of the Product.

36. This action should be assigned to the Buffalo Division because Defendant's principal place of business is in Buffalo.

Parties

37. Plaintiff Michelle Gallagher is a citizen of Hollywood, Florida, Broward County.

38. Defendant Lactalis American Group, Inc. is a Delaware corporation with a principal

place of business in Buffalo, New York, Erie County.

39. Defendant is one of the world's leading sellers of cheese.

40. The Président brand was created almost 90 years ago in Laval, France, by a family of artisan cheesemakers.

41. The Product is sold at tens of thousands of retail locations such as grocery stores, warehouse club stores, convenience stores, big box stores, and online, in the States covered by the classes Plaintiff seeks to represent.

42. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including BJ's Wholesale Club, 4000 Oakwood Blvd, Hollywood, FL 33020, between February and April 2022, among other times.

43. Plaintiff bought the Product because she expected it was made in Greece.

44. Plaintiff bought the Product at or exceeding the above-referenced price.

45. Plaintiff relied on the front label representations identified here.

46. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

47. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

48. Plaintiff paid more for the Product than she otherwise would have, the Product was worth less than what she paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

Class Allegations

49. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Georgia, South Carolina, Tennessee, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

50. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

51. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

52. Plaintiff is an adequate representative because her interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq.*

(Consumer Protection Statute)

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff and class members desired to purchase a product made in Greece, or at the very least in another European country.

58. Defendant's false and deceptive representations and omissions are material in that

they are likely to influence consumer purchasing decisions.

59. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

60. Plaintiff relied on the representations.

61. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

62. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

63. Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

64. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, Plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

65. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

66. The Product was manufactured, labeled, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made in Greece, or at the very least in another European country.

67. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

68. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

69. Defendant was aware of consumer demand for authenticity and authentic products.

70. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was made in Greece, or at the very least in another European country.

71. Defendant's representations affirmed and promised that the Product was made in Greece, or at the very least in another European country.

72. Defendant described the Product so Plaintiff and consumers believed it was made in Greece, which became part of the basis of the bargain that it would conform to its affirmations and promises.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its authentic, high-quality cheese, honestly marketed to consumers.

75. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

76. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

77. Plaintiff provides notice to Defendant that it breached the express and implied warranties associated with the Product.

78. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

79. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

80. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it was made in Greece.

81. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was made in Greece, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

82. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

83. Defendant had a duty to truthfully represent the Product, which it breached.

84. This duty is based on Defendant's position, holding itself out as having special knowledge and experience in this area, as custodian of the Président brand.

85. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

86. These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

87. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a nationally recognized and trusted brand.

88. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

89. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

90. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made in Greece.

91. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

92. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages, statutory and/or punitive damages, and restitution pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

4. Other and further relief as the Court deems just and proper.

Dated: August 14, 2022

                                            Respectfully submitted,

                                            /s/ Spencer Sheehan
                                            Sheehan & Associates, P.C.
                                            60 Cuttermill Rd Ste 412
                                            Great Neck NY 11021
                                            Tel: (516) 268-7080
                                            spencer@spencersheehan.com